# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CASE No.: 3:24-CV-00733

EQUITY SHIFT, INC.,

            **Plaintiff,**

   **vs.**

BITE INVESTMENTS (CAYMAN LIMITED),
Bite Asset Management (Cayman) Limited,
BITE INVESTMENTS (UK) LIMITED, BITE
STREAM LIMITED, and BITE
INVESTMENTS (US) LLC,

         **Defendants**

**COMPLAINT**

**Jury Trial Demanded**

In February 2019, Plaintiff, a small fintech startup Equity Shift, Inc., acquired the BITE, a patented distributed ledger (a.k.a. blockchain) platform that automates a variety of activities related to financial services and transactions in private markets. Since then, Plaintiff has painstakingly built and marketed the BITE platform and services, ultimately winning a coveted services agreement to provide the BITE platform to global investment firm KKR. In 2021, Defendants, the commonly controlled sub entities of global financial technology company Bite Investments, deliberately seeded confusion in the marketplace by using the mark "BITE" for their financial software and platform, trading on Plaintiff's BITE trademark, and purposely opened offices in the United States to expand into the U.S. financial market and grow the sales and tech positions of Bite Investments. Defendants' actions have and continue to infringe Plaintiff's rights in its BITE trademark. Plaintiff brings this action to collect damages to make itself whole and to hold Defendants accountable for their infringing conduct.

## PARTIES

1.    Plaintiff Equity Shift, Inc. ("Equity Shift") is a Delaware corporation with its principal place of business at 434 Fayetteville Street, Suite 1150, Raleigh, North Carolina.

2.    Defendant Bite Investments (Caymans) Limited ("BI Caymans") is a private limited company organized under the laws of the Cayman Islands with registered offices at 64 Sheddon Rd, 5th Floor, P.O. Box 31325 SMB, Grand Cayman, Cayman Islands.

3.    Defendant Bite Asset Management (Cayman) Limited, ("BAM") is a private limited company organized under the laws of the Cayman Islands with registered offices at 64 Sheddon Rd, 5th Floor, P.O. Box 31325 SMB, Grand Cayman, Cayman Islands.

4.    Defendant Bite Investments (UK) Limited ("BI UK") is a private limited company organized under the laws of England and Wales with registered office address at 28 Eccleston Square, London, England, SW1V 1NZ.

5.    Defendant Bite Stream Limited ("Bite Stream") is a private limited company organized under the laws of England and Wales with registered office address at 28 Eccleston Square, London, England, SW1V 1NZ.

6.    Defendant BITE Investments (US) LLC, ("BI US") is a limited liability corporation organized under the law of Delaware with a registered address in Kent, Delaware.

## JURISDICTION AND VENUE

7.    This is an action for trademark infringement and cybersquatting arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

8.      Defendants engage in business in this judicial district, engage in unfair and deceptive trade practices in this judicial district, and direct their cybersquatting activities to consumers in this judicial district.

9.      This court has personal jurisdiction over Defendants.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this district.

## FACTUAL ALLEGATIONS

11.     Equity Shift is a fintech start-up in a niche market that leverages blockchain technology to offer financial services including primary offerings, convertibles, vesting, and a variety of secondary transactions. Equity Shift uses its patented BITE platform to provide control over private transactions such as primary fundraising, tender offers, secondary trading, and transfer activities. Equity Shift is registered as a broker-dealer regulated by the Financial Industry Regulatory Authority ("FINRA") and operates an alternative trading system ("ATS") with the U.S. Securities and Exchange Commission ("SEC"). The BITE platform is registered as an ATS.

12.     Plaintiff provides brokerage services to issuers (e.g., Corporations, Limited Liability Companies, Partnerships) and their constituents (e.g., employees, investors, lawyers, agents), including acting as an agent when a retail investor buys or sells securities through its ATS. The securities include, but are not limited to, unregistered (i.e. exempt from registration with the SEC), non-public company securities, including common and preferred stock, units, synthetic securities, warrants, convertible securities, promissory notes, fixed income (debt) securities, and interests in private funds. Plaintiff does not offer investment advisory services.

3

13.     Plaintiff is the owner of valid and subsisting United States Service Mark

Registration No. 5795387 ("Reg. '387") on the Principal Register in the United States Patent and

Trademark Office for the service mark BITE (hereinafter "BITE Mark") in international class 36

for

> *Financial services, namely, electronic financial settlement services in the nature of brokerage of energy and electricity, electronic payment processing services, providing financial information, financial services, namely, electronic financial settlements in the nature of a financial exchange for energy and electricity transactions; cryptocurrency transactions.*

Attached as **Exhibit 1** is a true and correct copy of the registration certificate for

Plaintiff's United States Service Mark Registration No. 5795387, which was issued by the United

States Patent and Trademark Office on July 2, 2019 and the assignment to Plaintiff.

14.     Plaintiff is the owner of trademark application United States Serial No. 90616025

in internation class 42 for

> *Platform as a service (PAAS) featuring a computer software platform for transfer of securities in secondary markets; platform as a service (PAAS) featuring a computer software platform for exchanging and trading financial securities.*

15.     In the fall of 2017, Plaintiff's predecessor in interest, Causam Enterprises, Inc.

("Causam"), began programming a financial services platform to leverage blockchain

technology. Causam filed a provisional patent application on February 14, 2018, for the

Blockchain Instrument for Transferable Equity platform, BITE for short. The securities traded on

that platform are called BITEs. The provisional patent discloses Thomas Marshall Gordon, III,

CEO of Plaintiff, Joseph W. Forbes, Jr., CEO of Causam, and Gregory Frederick Bush as the

inventors of the BITE invention.

16.     Neither the Defendants nor anyone working for them were inventors or

participated in Causam's BITE invention or platform.

4

17.     The BITE platform automates a variety of steps in financial services related to the purchase and sale of private securities. Causam used the BITE platform to offer a BITE securitized token.

18.     On February 27, 2018, Causam launched the BITE website at the URL bite.causamexchange.com where potential investors could review a whitepaper and learn more about BITE and Causam eXchange. The presale for the private security offering began on March 8, 2018. A screenshot from Causam's website at the time of the presale is shown below.



19.     Causam marketed BITE on social media sites such as Twitter, Reddit, and Facebook. It also appeared nationwide on the Internet in investing articles at Investopedia, Bloomberg, National Law Review, Forbes, and Green Tech Media. Screenshots from Twitter and Facebook posts during this time are shown below.

5

Advertisement on Twitter:





20.     The BITE website received 3,000+ views and hits and over 100 prospective investors directly contacted Causam via emails, Angel list, and LinkedIn for investment in BITE.

21.     During 2018, Thomas Gordon, one of the BITE patent inventors, saw more potential for the BITE platform and partnered with Will Ducket to found Plaintiff Equity Shift.

22.     In early 2019, Equity Shift began negotiations with Causam to purchase Causam's interest in the BITE intellectual property, including the BITE patents, the BITE mark, and the

6

BITE software. Joseph Forbes CEO of Causam saw Equity Shift's plan as having more potential for BITE and agreed to sell those assets to Equity Shift.

23.    During March 2019 and the following months, Plaintiff provided BITE financial services through the use of the BITE platform and through interaction with customers and users. Plaintiff launched its BITE platform as a Beta program.

24.    The Beta program offered Beta customers the opportunity to use BITE services and the BITE platform in exchange for Plaintiff receiving information and feedback from Beta customers on how they perform financial transactions, keep records for their type of business, and the functions they want from the BITE software and platform.

25.    After a period of customization and onboarding, Beta customers entered into subscriptions for BITE services and use of the BITE platform.

26.    Currently, Equity Shift has registered users across the United States and U.S. citizens living in 8 foreign countries.

27.    Equity Shift's customers access BITE services and platform online via an Internet browser on a computer or cellphone. A screenshot of the BITE platform accessed via a cellphone is shown below:




28.     As a result of customer requests, and in order to expand its business and services to offer secondaries in securities, Equity Shift became a registered FINRA broker-dealer and registered the BITE platform as an Alternative Trading System ("ATS"). Due to regulatory requirements, Plaintiff was limited to commercial operations and certain public advertisements pending registration.

29.     As a condition of approval, Equity Shift was forced to pause its use of the BITE platform for cryptocurrency transactions due to SEC regulations prohibiting cryptocurrency for securities transactions. However, if SEC regulations change, and Equity Shift intends to resume its use of the BITE platform for cryptocurrency transactions when regulations will allow.

8

30.     In addition to the services offered in the registered BITE mark, Equity Shift offers BITE software platform and financial services for a variety of financial securities transactions, secondary market investments, dealer services, and other exchanges of instruments through an online platform. Equity Shift offers its services to private companies, investment teams, legal professionals, brokers and advisors who market and manage client offerings, and private investors.

31.     Equity Shift has expended substantial time, money, and resources marketing, advertising, and promoting the services sold under the BITE Mark, including through direct marketing to businesses in the United States, word of mouth referrals from current customers, and use of social media to make connections to promote and sell BITE financial services and the BITE platform and software services.

32.     Most recently, Equity Shift secured a contract with KKR & Co., Inc., ("KKR") a global investment company, in which KKR will use Equity Shift's BITE platform and blockchain ledger to offer and sale private securities to employees of businesses that KKR acquires.

33.     As a consequence of its extensive activities in commerce in support of its services, Equity Shift has established rights in the mark BITE for financial products and services, including the BITE platform and Software as a Service.

34.     Plaintiff and its predecessor have used the BITE Mark in commerce throughout the United States since February 27, 2018, in connection with the distribution, sale, offering for sale, marketing, advertising, and promotion of the BITE.

35.     As a result of its widespread, continuous, and exclusive use of the BITE Mark throughout the United States to identify its services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the BITE Mark.

### Overview of Defendants' Use of the Accused Mark

36.     Bite Investments is a global financial technology company with many tentacles spreading out from the ultimate corporate parent, VCP Advisors Limited, d/b/a VCP Apex ("VCP") in Europe, the U.S., and Asia. Upon information and belief, VCP is a provider of financial, advisory, and capital raising services for corporate and fund manager clients, and provides services to its various Bite Investment subsidiaries, including those named as defendants in this action. For the purposes of this action, "Bite Investments" will be used to refer collectively to the Defendants.

37.     Upon information and belief, Bite Investments offers financial services, including an online investment platform called BITE Wealth Management, software as a service ("SaaS") to digitize alternative investments in an end-to-end investment process called Bite Stream platform, and a digital hub of alternative investment funds and investment firms called Bite Wealth Universe. Bite Investments offers these financial services by utilizing its many interrelated entities who all have common directors and whose services and products appear to be offered from Bite Investments website at the domain biteinvestments.com.

38.     Without Plaintiff's authorization after Plaintiff acquired rights in its BITE Mark, Defendants adopted and began using a mark identical to Plaintiff's BITE Mark (hereinafter, the "Accused Mark") in US commerce.

39.     "Accused Mark" is defined to include all of Defendants' BITE conjugative marks including Bite Investments, Bite Stream, and Bite Wealth Universe.

10

40.     Upon information and belief, Defendants have been engaged in the advertising, promotion, offering for sale, and sale of financial services and software as a service using the Accused Mark throughout the United States since at least March 30, 2021. A screenshot of Defendants' website at the domain biteinvestments.com showing the use of the Accused Mark from June 25, 2021 is shown below.



41.     Defendants further reached into the U.S. market by launching an app in the Google Play store which showed use and promotion of the Accused Mark. A screenshot from the Google Play Store from September 2023 is shown below.

11



42. In November 2023, Defendants continued expanding their infringing use and market of the Accused Mark with the launch of Bite Stream, described by Defendants as a "disruptive wealth management feature" to enable asset managers to use the same platform they use for fundraising, investor management, investor relations to reach their audience. Below is a July 2023 screenshot from Defendants' website at the domain biteinvestments.com showing the promotion of Bite Stream.



43.     In early summer 2024, Defendants revamped the website at the Accused Domain and made Bite Stream the forefront use of the Accused Mark. A screenshot from July 2024 of Defendants current website at the domain biteinvestments.com is shown below.



44.     Defendants continue to promote and advertise the Accused Mark in the U.S. market, employing similar marketing tactics as Plaintiff with direct networking. The following are July 2024 Screenshots of Defendants' Linkedin feed showing Defendants' New York

networking event in late December 2023 and Defendants' Summer 2024 sponsorship of the

Southeastern Alternative Funds Association's summer BBQ in Atlanta, Georgia.





45. In early June 2024, Bite Investments announced its partnership with U.S. based Intapp to provide its services using the Accused Mark via DealCloud, a North Carolina limited liability corporation with headquarters in Charlotte, North Carolina. Plaintiff also has an office location in Charlotte, North Carolina.

46. Defendants are regularly engaging in business in North Carolina via their Bite Stream platform and upon in formation and belief, ongoing sales of private securities in North Carolina.

47. Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' goods and services and have and are likely to deceive the relevant

consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

48.     Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's BITE Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's BITE services to the Defendants.

49.     Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

**Defendants Relationships, Acting as One**

50.     On November 30, 2018, William Kerr Rudebeck and Charles Henry Talbot-Ponsonby co-founded and registered Bite Investments (UK) Limited ("BI UK") via seeding from VCP Advisors. Mr. Rudebeck is the CEO of Bite Investments and co-chairman of VCP. Mr. Talbot-Ponsonby is the President of Bite Investments and co-chairman of VCP.

51.     Upon information and belief, sometime before May 2019, Bite Investment (Cayman) Limited ("BI Cayman") was registered with General Registry of the Cayman Islands. Upon information and belief, Mr. Rudebeck and Mr. Talbot-Ponsonby are directors of BI Cayman.

52.     Upon information and belief, BI Caymans is a fintech holding company and the parent company of wholly owned subsidiary Bite Asset Management (Cayman) Limited ("BAM"), a fund management business for which Mr. Rudebeck is also a director.

53.     Upon information and belief, BAM is the owner of the registered domain name biteinvestments.com ("Accused Domain Name") and operates the website at that URL

www.biteinvestments.com ("Defendants' Website"). Defendant's Website remains active as of the filing of this complaint.

54.    Upon information and belief, there has been over 19 Whois record changes for the domain biteinvestements.com and at least three registrants since 2018.

55.    Upon information and belief, on or about January 31, 2022, BAM became the registrant of the Accused Domain Name.

56.    Defendants' Website consists of advertising and promoting the same financial services that Plaintiff offers under its Accused Mark. The following is a July 2024 screenshot of the services offered under the Accused Mark.



57.    Upon information and belief, BI UK is the wholly owned subsidiary of BAM and operates the portion of Bite Investments known as Bite Wealth Universe. Upon information and

17

belief, Bite Wealth Universe is accessed via the Bite Stream platform for financial software services. The following is a July 2024 screenshot of the login screen of Bite Wealth Universe accessed from a link on Defendants' Accused Domain Name, biteinvestments.com.



58.     Upon information and belief, Bite Stream is a wholly owned subsidiary of BITE Investments (UK) Limited. Upon information and belief, Bite Stream is a financial technology company that offers software as a service under the Bite Investments group name. Upon information and belief, William Kerr Rudebeck and Charles Henry Talbot-Ponsonby are directors of Bite Stream.

59.     In December 2021, Bite Investments established a New York City office to lead its U.S. expansion and to grow the sales and tech position of Bite Investments. In February 2023, Bite Investments established new offices in Delaware. Upon information and belief, those offices were for BI US.

60.     Upon information and belief, BI US is a financial technology company which is used by Bite Investments for contracting with customers in the United States for Bite Stream

18

financial software services. Per the Bite Stream terms of use, the contracting location for Bite Stream clients in North America is the State of Delaware.

61.     Upon information and belief, William Kerr Rudebeck is a director and oversees the sales team at BI US and develops relationships with potential clients. Upon information and belief Charles Henry Talbot-Ponsonby is a director of BI US and oversees the sales team at BI US and ensures that the operations are well functioning.

## Illegal Financial Transactions

62.      Upon information and belief, VCP's wholly owned subsidiary VCP Americas LLC, d/b/a VCP Apex (US), provides operational services to BI Caymans, to offer the financial services.

63.     Upon information and belief, BI Caymans made its first sale in the United States under the Accused Mark on October 3, 2019. Specifically, BI Caymans marketed and/or sold exempt equity securities to investors in New York and in North Carolina.

64.     Upon information and belief, BI Caymans flouted both federal and state law when selling to investors.

65.     First, BI Caymans failed to file SEC Form D (Notice of Sale of Securities) as required by the SEC for companies selling securities in a Regulation D exemption within fifteen days of its first sale of securities on October 3, 2019. Upon information and belief, Defendant BI Caymans failed to file Form D until December 12, 2020, more than a year late.

66.     Second, upon information and belief, Defendant BI Caymans failed to notify the North Carolina Secretary of State of the sale and failed to file the appropriate form as required under North Carolina law, federal regulations, and SEC Form D.

19

67.     Upon information and belief, the aforementioned SEC Form D, was filed for BI Caymans in December 2020 by director Henry Talbot-Ponsonby, and the associated broker or dealer was VCP Americas LLC.

68.     Upon information and belief, beginning in 2019 and through 2024, VCP Americas, LLC, d/b/a VCP Apex (US), a New York brokerage firm is or was a registered as a FINRA brokerage firm and Mr. Henry Talbot-Ponsonby is or was the principal and CEO of VCP Apex (US). As the principal of a FINRA registered brokerage, Mr. Talbot-Ponsonby is required to be a FINRA registered broker.

69.     Upon information and belief, Mr. Talbot-Ponsonby was a registered FINRA broker with VCP Apex (US) from 2014 until March 2024.

70.     Upon information and belief, Mr. Rudebeck was a registered FINRA broker with VCP Apex (US) from 2015-until early 2024.

71.     Upon information and belief, Mr. Talbot-Ponsonby and Mr. Rudebeck, as former registered FINRA brokers, were required to take and pass certain exams covering U.S. and state securities laws and are therefore familiar with United States and state regulations covering the sale of private securities.

72.     As CEO and VP of Bite Investments, Mr. Talbot-Ponsonby and Mr. Rudebeck have a fiduciary duty to Bite Investment to use their knowledge to comply with laws and regulations.

73.     Upon information and belief, Defendant BI Caymans has continued to offer private equity and debt under federal exemption Rule 506(b) and on June 26, 2024, filed an amendment to its December 12, 2020 Form D filing. Upon information and belief, Defendant BI Caymans has still not complied with North Carolina filing notices for private securities.

74.     Upon information and belief, SEC and North Carolina filing requirements are intended to provide transparency and information to investors. By flouting these requirements, Defendant BI Caymans is offering BITE services in an unlawful manner.

75.     Upon information and belief, using the Internet and its website at https://vcpapex.com, VCP offered BITE Alternative Investments as direct placements in 2019, 2020, 2021. A screenshot showing information about the 2020 and 2021 placements is shown below:



76.     Defendant BI Caymans continues to reach into U.S. commerce and use the Accused Mark for other financial transactions and financial services.

77.     Defendant BI Caymans claims that it has received U.S. regulatory approval to provide financial services including for private equity funds and services related thereto; offshore investments and services related thereto; hedge fund investment and services related thereto;

computerized financial services; and financial services provided online. Defendant BI Caymans claims that it had been providing these services in U.S. commerce since August 2020.

78.     In June 2021, Defendant BI Caymans prepared a statement under penalty of perjury that states it is actively using the Accused Mark in U.S. commerce in relation to the goods and/or services it offers and sells and has been since March 30, 2021.

79.     Bite Investments regularly shifts assets between its many subsidiaries ignoring corporate formalities and operating as one business.

80.     On June 22, 2023, BI Caymans transferred its rights in the Accused Mark to BI UK where it is continued to market and sell its SaaS as Bite Stream.

81.     Upon information and belief, BI US is Defendants' business for offering Bite Stream financial software services in North America.

82.     Upon information and belief, for all Bite Stream services being provided in United States commerce, the contracting location for those services is Delaware.

83.     On June 3, 2024, Bite Investments and Intapp announced a partnership with Intapp to integrate Bite Stream with Intapp DealCloud. The following is an August 2024 screenshot from Intapp's website at the URL https://www.intapp.com/partner/bitestream/ showing use and promoting of Defendants' Accused Mark.



84. DealCloud, LLC, is a North Carolina limited liability corporation with a principal office in Charlotte, North Carolina.

85. Defendants are intentionally marketing and selling their financial services and software services using the Accused Mark in commerce throughout the United States.

86. Defendants promotes its Bite Stream integration with DealCloud via social media. The following is Defendants' June 4, 2024 X (formerly Twitter) post.



23

87.     Upon information and belief, Defendants offer and sell their services under the

Accused Mark to asset managers, fundraising companies, wealth managers and advisors, legal

teams, fund administrators, custodians, and investors, the same kinds of customers as served by

Plaintiff. The following is a July 2024 screenshot of Defendants' website at the domain

biteinvestments.com listing who they serve.



88.     Upon information and belief, the services Defendants have provided, marketed,

advertised, promoted, offered for sale, and sold under the Accused Mark are identical to and

directly compete with those services provided by Plaintiff and are a direct infringement of

Plaintiff's trademark rights.

### COUNT I
### Infringement of Federal Registered Mark 15 U.S.C. § 1114

89.     Plaintiff repeats and realleges the previous paragraphs, as if fully set forth herein.

90.     Plaintiff has a registered trademark in BITE, U.S. registration number 5795387.

91.     Plaintiff's BITE is well known to consumers as indication Equity Shift's BITE

Platform and services.

92.     Defendants adopted the use of the mark BITE with knowledge of Plaintiff's use

of the BITE mark.

93.     Defendants currently conducts their businesses under the Accused Mark BITE.

24

94.     Defendants offers the same and closely related financial services to those by Plaintiff.

95.     Plaintiff and Defendants offer their services to the same class of consumers in overlapping geographic areas of trade.

96.     Plaintiff, to include its licensed partners, and Defendants offer financial services, including electronic settlement services.

97.     Defendants offer its Accused Mark BITE financial services in the same areas where Plaintiff offers its goods and services, namely to all 50 states.

98.     Defendants offer their Infringing BITE goods and services through at least some of the same channels of trade as those used by Plaintiff to offer BITE branded services, to include an online platform and software.

99.     Defendants advertise is Infringing BITE services through at least some of the same channels of trade as those used by Plaintiff to advertise its BITE services, to include Internet webpages, social media, and direct marketing.

100.    Defendants' use of BITE in its marks, on the Internet, in social media, and in advertising is likely to cause confusion, or to cause mistake, or to deceive consumers into believing that Defendants are associated with, affiliated with, or endorsed by Plaintiff.

101.    Defendants infringe Plaintiff's BITE mark.

102.    Defendants launched their online platform and online software with knowledge of Plaintiff's registered trademark rights.

103.    Defendants willfully infringed Plaintiff's trademark rights when they sold BITE financial services and online software subscriptions in the United States.

**COUNT II**
**Federal Unfair Competition**

**15 U.S.C. § 1125 (a)**

104.     Plaintiff repeats and realleges the previous paragraphs, as if fully set forth herein.

105.     Defendant's unauthorized use in commerce of the Accused Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's services, and is likely to cause consumers to believe, contrary to fact, that Defendant's services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

106.     Defendant's unauthorized use in commerce of the Accused Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

107.     Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

108.     Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

109.     Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

110.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
## Cybersquatting 15 U.S.C. § 1125 (d)

111.    Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

112.    Plaintiff has registered and owns the BITE mark under the Lanham Act.

113.    Defendants have demonstrated a bad faith intent to profit from the distinctive BITE mark by registering and using the domain names biteinvestments.com which contain and is confusingly similar to the BITE mark.

114.    Defendants offer goods and services in direct competition with Plaintiff through the www.biteinvestments.com website.

115.    Upon information and belief, Defendant BI UK, the first Bite Investment entity, was not incorporated under November 30, 2018 and could not be the registrant of the Accused Domain Name prior to its legal existence.

116.    Upon information and belief, the Accused Domain Name was owned by a Registrant located in China until on or about January 31, 2022, when Defendant BAM became the registrant of the Accused Domain Name.

117.     Upon information and belief, Defendant's acts as alleged herein are willful, with the deliberate intent to trade on the goodwill of Plaintiff's BITE Mark, cause confusion and deception online and in the marketplace, divert internet users looking for Plaintiff's Website or Plaintiff's services under the BITE Mark to Defendant's Website, and divert potential sales of Plaintiff's services to the Defendant.

118.    Defendant's diversion of traffic from Plaintiff's website has harmed and continues to harm Plaintiff's ability to generate business and retain customers.

119. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

120. Defendant's registration and use of the Accused Domain Name has caused and will continue to cause damage to Plaintiff, in an amount to be proven at trial, and is causing irreparable harm to Plaintiff, for which there is no adequate remedy at law.

121. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, cancellation of Defendant's registration of the Accused Domain Name.

122. Plaintiff is further entitled to recover its damages and Defendant's profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiff is entitled to maximum statutory damages in the amount of $100,000 for the Accused Domain Name pursuant to 15 U.S.C. § 1117(d).

123. Plaintiff is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

## COUNT IV
## Common Law Infringement

124. Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

125. Plaintiff has established common law rights to the BITE Mark in the United States through its use of the mark since at least as early as the launch of the BITE platform on February 27, 2018.

126. Defendant has infringed upon Plaintiff's common law rights to the BITE Mark through its unauthorized use of the BITE Mark to provide the same or substantially the same services that Plaintiff has been providing under the BITE Mark since before Defendant.

127.     Defendant admitted to using the BITE Mark in commerce in the United States since as early as March 30, 2021, years after Plaintiff had established rights in the BITE Mark.

128.     Defendant's use of the BITE Mark, including its use of "Bite Stream" for its platform, is so similar to Plaintiff's BITE Mark that it is likely the marks will be confused.

129.     Defendant's use of the BITE Mark has caused and will continue to cause confusion among consumers as to the source of the Defendant's services.

130.     Plaintiff is entitled to injunctive relief.

131.     Plaintiff is entitled to collect damages and the recovery of profits derived from the infringement in an amount to be determined at trial.

## COUNT V
## North Carolina Gen. Stat. §§ 75-1.1

132.     Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

133.     Defendants are engaging in infringement of a registered trademark, infringement of common law trademarks, and cybersquatting.

134.     Defendants sold securities under the Accused Mark in North Carolina without registering with the North Carolina Secretary of State, purposely flouting state law and denying North Carolina consumers the protection legal compliance provides in financial purchases.

135.     Defendants engaged in unfair competition and targeted a North Carolina business to with whom to partner and entered into a contract to integrate Defendants' Bite Stream financial software with a North Carolina company's software in an attempt to confuse consumers as to the source of the services offered and their affiliation with Plaintiff.

136.     Defendants' actions affected commerce.

137.     North Carolina consumers have been harmed by Defendants' bad acts.

29

138.    Defendants' conduct constitutes unfair or deceptive acts, practices, and methods of competition in violation of N.C. Gen. Stat. § 75-1.1(a).

139.    On information and belief, Defendants' acts are done willfully, intentionally, maliciously, and in bad faith.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays the Court to:

A.    Issue preliminary and permanent injunctive relief, enjoining Defendants and all agents, servants, employees, successors and assigns, and other persons acting in concert with or affiliated with Defendants,

    a.  from using the www.biteinvestments.com URL;

    b.  Providing, selling, marketing, advertising, promoting, or authorizing any third party to provide, sell, market, advertise, or promote Defendants' services bearing the Accused Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's BITE mark;

    c.  engaging in any activity that infringes Plaintiff's rights in its BITE mark;

    d.  engaging in any activity constituting unfair competition with Plaintiff;

    e.  engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's BITE Mark.

    f.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with

Plaintiff, or (ii) Plaintiff's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

g.   using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

h.   registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Accused Mark or any other mark that infringes or is likely to be confused with Plaintiff's BITE mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

i.   aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (i);

B.   Order Defendants to transfer www.biteinvestments.com to Plaintiff;

C.   Find that Defendants' acts were willful and intentional;

D.   Require Defendants to account to Plaintiff for their profits and the damages suffered by Plaintiff as a result of Defendants' acts alleged herein;

E.   Order that Defendants pay statutory damages of up to $100,000 per domain name for violation of 15 U.S.C. § 1125(d), pursuant to 15 U.S.C. § 1117(d);

F.   Order that any monetary award be trebled pursuant to N.C. Gen. Stat. § 75-16;

31

G.    Award Plaintiff its taxable costs and disbursements in this action pursuant to 15

U.S.C. §1117;

H.    Award pre-judgment and post-judgment interest as allowed by law;

I.    Award Plaintiff its reasonable attorneys' fees and expenses pursuant to 15 U.S.C.

§ 1117 and N.C. Gen. Stat. § 75-16.1; and

J.    Afford Plaintiff such other relief to which it is entitled and as this Court deems

just and equitable.

Respectfully submitted this the 12th day of August 2024.

ENVISAGE LAW

*s/Anthony J. Biller*
Anthony J. Biller
N.C. Bar No. 24,117
2601 Oberlin Rd, Ste. 100
Raleigh, North Carolina 27608
Phone: 919.755.1317
Fax: 919.782.0452
Email: ajbiller@envisage.law

*Attorneys for Equity Shift*
